BERRY ET AL. *v.* DOLES ET AL.

No. 76–1690.   Decided June 26, 1978

PER CURIAM.

This appeal presents a challenge to the scope of the remedy allowed by a three-judge District Court for the Middle District of Georgia for failure of appellees to comply with the approval provisions of § 5 of the Voting Rights Act of 1965, 79 Stat. 439, as amended, 42 U. S. C. § 1973c (1970 ed., Supp. V).

In 1968, the State of Georgia enacted a statute intended to stagger the terms of the three members of the Peach County Board of Commissioners of Roads and Revenues. The then-existing statute, adopted in 1964, provided that all three posts were to be filled at four-year intervals. By operation of the

1968 amendment, the single at-large member was to be elected to a two-year term in 1968 and to a four-year term at subsequent general elections. Appellees concede, and the three-judge court found, that the 1968 statute constituted a change in voting procedures subject to the provisions of § 5 and that the change had been implemented without first having been submitted for approval either to the United States District Court for the District of Columbia or to the Attorney General as required by § 5.

Four days prior to the August 10, 1976, primary election for the two seats on the Board not including the at-large post, appellants filed this action to enforce the requirements of § 5. Appellants' requests for declaratory and injunctive relief were not acted upon until after the scheduled 1976 primary and general elections.

On February 28, 1977, the three-judge court, without a hearing, enjoined further enforcement of the 1968 statute until such time as appellees effected compliance with § 5. However, the District Court refused appellants' request to set aside the 1976 elections, noting "the rather technical changes made in the county's election law by the 1968 amendment and, more important, the apparent lack of any discriminatory purpose or effect surrounding the use of the law in the 1976 elections." In expressly limiting its order to prospective relief, the District Court also relied on our decision in *Allen* v. *State Board of Elections,* 393 U. S. 544 (1969).

On April 26, 1977, the three-judge court denied appellants' motion for reconsideration.

In this Court, appellants take the position that the relief awarded in this case is wholly inadequate in failing to remedy the existing § 5 violation. Appellants assert that by refusing either to set aside the 1976 election or to order that all three Board members be elected in 1978, the District Court, at least until the 1980 election, leaves undisturbed the effects of the § 5 violation, thereby acknowledging that, at least for a time, local officials may successfully disregard § 5 requirements.

Appellees urge us to affirm the District Court judgment on grounds that the 1976 election involved the two Board posts which were not mentioned in the 1968 statute. Accordingly, appellees argue, election to these posts is not subject to § 5. However, even assuming that the District Court had the power to effect one of the alternative remedies suggested by appellants, appellees believe that the court below was correct in refusing to do so.

At our request, the United States, as *amicus curiae,* has filed a brief in this case. The Government takes the view, espoused by appellants, that the 1976 election was affected by the voting change prescribed in the 1968 statute and that the District Court's failure to require prompt compliance with § 5 permits the violation to continue. It is the submission of the United States that the question whether the staggering of Board terms provided for by state statute in this case necessarily has a racially discriminatory effect should properly be promptly submitted to either the District Court for the District of Columbia or to the Attorney General in conformity with the approval procedures set forth in § 5.

In *Perkins* v. *Matthews,* 400 U. S. 379 (1971), decided after *Allen, supra,* we had occasion to address the remedy issue which now confronts us. We indicated in that case that "[i]n certain circumstances . . . it might be appropriate to enter an order affording local officials an opportunity to seek federal approval and ordering a new election only if local officials fail to do so or if the required federal approval is not forthcoming." 400 U. S., at 396–397. The circumstances present here make such a course appropriate.

In this case, appellees' undisputed obligation to submit the 1968 voting law change to a forum designated by Congress has not been discharged. We conclude that the requirement of federal scrutiny imposed by § 5 should be satisfied by appellees without further delay. Accordingly, we adopt the suggestion of the United States that the District Court should enter an

order allowing appellees 30 days within which to apply for approval of the 1968 voting change under § 5. If approval is obtained, the matter will be at an end. If approval is denied, appellants are free to renew to the District Court their request for simultaneous election of all members of the Board at the 1978 general election.

The judgment of the District Court is affirmed insofar as it holds that appellees have violated the approval provisions of § 5 of the Voting Rights Act; the judgment is reversed insofar as it denies affirmative relief, and the case is remanded to the District Court with instructions to issue an order allowing appellees 30 days within which to apply for approval of the 1968 voting change under § 5, and for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE BRENNAN, with whom MR. JUSTICE MARSHALL joins, concurring.

I join the Court's opinion. The Court is surely correct that the District Court committed reversible error by not, at the very least, ordering the Peach County officials to seek pre-clearance of the voting change enforced in the 1976 election and affording appellants the opportunity, if prior approval is not granted, to seek an order that would cut short the terms of the two Commissioners elected in 1976 and require a new election under the pre-1968 law. The District Court manifestly erred in refusing to order such relief on the basis of its conclusion that the change was "rather technical" with no "apparent discriminatory purpose or effect." Nothing could be clearer than that a district court—other, of course, than the District Court for the District of Columbia—has no jurisdiction to assess the purpose or effect of any voting change. See, *e. g., United States* v. *Board of Supervisors,* 429 U. S. 642 (1977); *Perkins* v. *Matthews,* 400 U. S. 379, 385 (1971).

Although the Court does not reach this issue, I think it clear

that, if the Peach County officials do not hereafter obtain federal preclearance for the 1968 change, the District Court must order a new election for all three posts at the earliest feasible time—that here being the regularly scheduled 1978 election. For if a designated federal entity cannot hereafter approve the 1968 voting change as racially neutral, it follows necessarily that there is a substantial probability that the 1976 election itself perpetrated racial discrimination in voting. To permit the results of the 1976 election to stand in the face of such a determination would be to do precisely what § 5 was designed to forbid: allow the burdens of litigation and delay to operate in favor of the perpetrators and against the victims of possibly racially discriminatory practices. See *South Carolina* v. *Katzenbach,* 383 U. S. 301, 335 (1966).

However, while I, therefore, agree that the District Court committed reversible error, I am also of the view that, in the circumstances of this case, a strong argument can be made that, whether or not preclearance can be obtained, the only sufficient remedy is to set aside the 1976 election and order a new election under the pre-1968 law. Here, the Peach County officials could not have reasonably believed at the time of the 1976 election that the 1968 voting change could continue to be validly enforced without obtaining prior federal approval; thus the situation is quite different from that present in cases like *Perkins* v. *Matthews, supra,* where the scope of the § 5 duty had been unsettled at the time of the election that was under attack.

If, in cases like the present one, the remedy of ordering a new election is not to be required in all cases, the political units covered by § 5 may have a positive incentive flagrantly to disregard their clear obligations and not to seek preclearance of proposed voting changes. For covered jurisdictions will then know that a § 5 violation, if a suit is brought, can only result in their being denied the right to continue to enforce those voting changes that could not have received federal approval in the

first place. As to all other voting changes, the sole effect of a suit for noncompliance with the approval provisions will be the limited sanction of requiring the political unit to obtain the federal approval which it should have received before any change was instituted.

The legislative background of § 5 strongly suggests to me that Congress expressly intended to preclude such a state of affairs. Section 5, of course, was intended to prevent those States which had a history of racial discrimination in voting from adhering to their long-established practices of continually contriving new laws to deprive blacks of any newly won voting rights. Congress sought to place the burden of inertia and litigation delay on the perpetrators of the discrimination by requiring affected States voluntarily to submit any new law affecting voting for federal approval before it became effective. The remedial theory the Court embraces today may retard, not further, the objective of having polities voluntarily comply with § 5, for a possible consequence may well be that a very large share of the burden of implementing federal policy will be placed on public and private enforcement. We ought to have the benefit of full briefing and oral argument to help indicate whether this will be the case.

I do not regard *Perkins* v. *Matthews, supra,* as necessarily supporting the Court's decision. While it is true that the Court there stated that there might be circumstances in which it would be appropriate to order a new election only if federal approval for the voting change were not procured within a specified time period, 400 U. S., at 396, the context of this statement clearly suggests that it is intended to apply only to cases in which it had not been reasonably clear at the time of the election that the change was covered by § 5. *Ibid.*\*

---

\*I recognize that the case involves a voting change first implemented in 1968. This fact does not, however, necessarily support the Court's decision. Since the duty to comply with § 5 is a continuing one and applied to Peach County's enforcement of the 1968 change in the 1976 election,

However, since there is no disposition on the part of my colleagues to note probable jurisdiction and set the case down for oral argument, I join the Court's opinion.

MR. JUSTICE POWELL, concurring in the judgment.

Although I believe that the wiser course would be simply to affirm the judgment below, I go along reluctantly with the Court's resolution of this case rather than bring it here for argument. I am willing to do this only because I consider it most unlikely that the Attorney General could find any reasoned basis for denying approval of the change at issue in this case. Thus, it is improbable that the court below ever will have to pass on the request to cut short the terms of the two Commissioners elected in 1976 which the Court allows appellants to "renew" if the change is not approved. *Ante,* at 193. I write to emphasize my view that the three-judge court cannot be faulted for its common-sense handling of this case. I do not understand the Court to disagree with this view.

## I

The facts and procedural posture of this case deserve a fuller treatment than the Court gives them. Under a state law enacted in 1964, the Board of Commissioners of Roads and Revenues for Peach County, Ga., is composed of three members, assigned to numbered posts. 1964 Ga. Laws No. 800, § 1, p. 2627. Posts 1 and 2 are filled by residents of designated districts, and Post 3 is elected at large. Until 1968, all three posts were elected simultaneously for four-year terms. In 1968, the Georgia Legislature enacted a statute providing for a partial staggering of the Commissioners' terms. 1968 Ga. Laws No. 800, § 2A, p. 2473. Under the statute, Post 3, the at-large seat, was to be elected to a two-year term in 1968, and thereafter to four-year terms. No change was made in

a strong argument can be made that the only relevant consideration should be that the § 5 duty was clear in 1976.

the terms of the other two Commissioners. The result is that the election for Post 3 no longer is held at the same time as the election for the other two posts.[1]

Elections were held under the amendment in 1968, 1970, 1972, and 1974 without challenge. It was only on August 6, 1976—four days before the 1976 primary election—that appellants filed this lawsuit seeking to enjoin that election and the general election on the ground that the amendment had not received the imprimatur of the Attorney General or the District Court for the District of Columbia as required by § 5 of the Voting Rights Act of 1965. A single judge of the District Court, acting promptly, ruled on appellants' motion for a preliminary injunction before the primary election was held. That judge, "seriously question[ing]" whether the change even was covered by § 5, and apparently in view of the tardiness of the suit—which to this day has not been explained—sensibly refused to enjoin the election. App. to Jurisdictional Statement 7a.

After the 1976 primary and general elections for Posts 1 and 2 had been held, a three-judge District Court was convened. That court concluded that the 1968 amendment was subject to the preclearance requirements of § 5 after all, and it enjoined enforcement of the 1968 amendment until those requirements had been met. "Given the rather technical changes made in the county's election law by the 1968 amendment and, more important, the apparent lack of any discriminatory purpose or effect surrounding the use of the law in the 1976 elections," however, the court denied appellants' request to set aside those elections. *Id.*, at 2a–3a, citing *Allen* v. *State*

---

[1] It should be noted that the amendment was enacted before this Court, by judicial interpretation, extended the coverage of the Voting Rights Act of 1965 in, *e. g.*, *Allen* v. *State Board of Elections*, 393 U. S. 544 (1969), and *Perkins* v. *Matthews*, 400 U. S. 379 (1971). Thus, when the amendment was enacted, there was no reason to suspect that § 5 preclearance was required.

*Board of Elections,* 393 U. S. 544, 571–572 (1969).[2] The three-judge court thereupon "dissolve[d] itself and remand[ed] the case to the originating judge for such other and further proceedings consistent with this opinion as may be required." App. to Jurisdictional Statement 4a.

Appellants then filed a motion for reconsideration and modification of the three-judge court's order. In this motion appellants—for the first time—asked the three-judge court to order that all three posts stand for election in 1978 if the change was not approved by then, thus cutting short the terms of the two Commissioners elected in 1976. See Jurisdictional Statement 7 n. 1, 15–16; Brief for United States as *Amicus Curiae* 4. The three-judge court refused to consider this belated request, stating: "The problem of relief is a question for a single-judge court." App. to Jurisdictional Statement 5a. Appellants, however, did not accept this clear invitation to press their request before a single-judge court.

Instead, they brought the instant appeal, urging the Court either to set aside the 1976 elections, or to cut short the terms of the two Commissioners elected in 1976 by declaring all three posts open in 1978. The United States as *amicus curiae* does not support appellants' request that the 1976 election be set aside. Neither does it support appellants' request that the Court declare all three posts open in 1978. Instead, it seeks relief that appellants never have requested, either in the court below or in this Court. It asks the Court to enter an order directing the District Court to give appellees 30 days within which to seek § 5 preclearance. If preclearance is not sought or if the change is not approved, the United States then argues that the District Court should be directed to allow appellants "to renew their request for election of all three members at

---

[2] In giving only prospective effect to its decision in *Allen,* the Court took into account the fact that "the discriminatory purpose or effect of [the challenged] statutes, if any, has not been determined by any court." 393 U. S., at 572.

the same time." Brief for United States as *Amicus Curiae* 8. The United States, like the Court today, see n. 7, *infra,* carefully takes no position on whether the District Court should grant such further relief if this request is "renewed."

In my view, the Court would be fully justified in holding that the United States, which is not a party to this suit and did not participate in the court below, is barred from injecting a new issue into the case by requesting the Court to grant relief that appellants themselves never have sought. It would be equally justified in holding that appellants are barred from asking the Court to declare all three posts open in 1978 after the three-judge court declined to rule on this belated request and after appellants ignored that court's express invitation to press their request before a single-judge court. As a general rule, this Court does not and should not allow parties or *amici* to raise issues here that were not raised in or ruled upon by the lower courts. Neither should this Court encourage parties to bypass avenues of relief that are open to them in the lower courts. The facts that the case is a Voting Rights Act case, and that the *amicus* is the United States, provide no justification for departing from these salutary principles.

## II

Since the Court has chosen, without explanation, to depart from these principles, I briefly address the question of relief that is presented. Appellees do not challenge the three-judge court's holding that § 5, as it has been expanded by judicial decision since enactment of the 1968 amendment at issue here, requires preclearance of that amendment. Nor do they challenge that court's entry of an injunction against enforcing the amendment in future elections until the change is approved. All they ask is that if the change is not approved, such a ruling should not be applied retroactively to abrogate the result of elections already held. In my view, there is much force to their plea.

This case is a classic example of how § 5, enacted to further

the exercise of an important constitutional right, has been judicially expanded to cover the most inconsequential change in any aspect of election procedure.[3]   Given this expansion, when courts are called upon to decide whether to grant retroactive relief, they should distinguish the minor or technical change from the substantive change that is likely to result in discrimination.   In refusing to set aside the 1976 election, the three-judge court, much to its credit, did just this.   Significantly, the Court today does not disturb that judgment, despite appellants' prayer that it do so.[4]

It must be remembered that the Voting Rights Act imposes restrictions unique in the history of our country on a limited number of selected States.[5]   The need to bring a measure of

---

[3] In *Perkins* v. *Matthews, supra,* the Court held that "§ 5 requires prior submission of any changes in the location of polling places."   400 U. S., at 388.   There are thousands of precincts and polling places in the jurisdictions covered by the Act, and changes in precinct boundary lines and polling places are necessary at frequent intervals to accommodate inevitable population shifts.   But under the Court's interpretation of the Act, a locality that moves a single precinct line or polling place half a block is required first to obtain permission from Washington.

[4] The Court thus rejects MR. JUSTICE BRENNAN's suggestion, *ante,* at 193, that the District Court "erred in refusing to order [retroactive] relief on the basis of its conclusion that the change was 'rather technical' with no 'apparent discriminatory purpose or effect.'"   See also *Allen* v. *State Board of Elections,* 393 U. S., at 572, quoted in n. 2, *supra; Perkins* v. *Matthews,* 400 U. S., at 396.

[5] As MR. JUSTICE STEVENS recently has written: "[The] so-called 'preclearance' requirement is one of the most extraordinary remedial provisions in an Act noted for its broad remedies.   Even the Department of Justice has described it as a 'substantial departure . . . from ordinary concepts of our federal system'; its encroachment on state sovereignty is significant and undeniable." *United States* v. *Sheffield Board of Comm'rs,* 435 U. S. 110, 141 (1978) (dissenting opinion) (footnote omitted).   Mr. Justice Harlan made much the same point by describing § 5 as "a revolutionary innovation in American government" which applies only to "a handful of States." *Allen* v. *State Board of Elections, supra,* at 585, 586 (concurring in part and dissenting in part).

common sense to its application is underscored further by the fact that state and local officials now are supplicants for the Attorney General's dispensation of approval under § 5 "at the rate of over 1,000 per year, and this rate is by no means indicative of the number of submissions involved if all covered States and political units fully complied with the preclearance requirement, as interpreted by the Attorney General." *United States* v. *Sheffield Board of Comm'rs,* 435 U. S. 110, 147 (1978) (STEVENS, J., dissenting) (footnote omitted). When a change is submitted, the Attorney General may block its implementation simply by stating, within 60 days, that he is unable to conclude that it does not have discriminatory purpose or effect. *Georgia* v. *United States,* 411 U. S. 526, 537 (1973). As a result, "the State may be left more or less at sea," *id.,* at 544 (WHITE, J., dissenting), unable to put into effect such routine and trivial changes as the movement of a polling place or a precinct boundary line.[6]

Thus, although I agree with the Court that the three-judge court did not err in refusing to set aside the 1976 elections, I remain dubious as to whether it would be any more proper for that court to order all three posts to stand for election in 1978 if the change is not approved. As the Court's order is framed, however, this question still is open in the District Court if the change is not approved.[7] Perhaps that court will be able to

---

[6] One would like to assume that the Attorney General exercises this unprecedented power to veto state and local legislation personally and with the most thoughtful deliberation. But, as previously noted, applications for his dispensation flow to Washington at a rate of over 1,000 per year—almost 4 per business day. Even if the Attorney General had no duties other than those imposed upon him by § 5, one might doubt whether it would be possible for him to pass judgment, with care and sensitivity, upon each change in election laws or procedure submitted for his approval.

[7] The Court "adopt[s] the suggestion of the United States that the District Court should enter an order allowing appellees 30 days within which to apply for approval of the 1968 voting change under § 5. . . . If

perceive some distinction that is not apparent to me between setting aside the 1976 elections—the denial of which relief this Court upholds—and achieving essentially the same result by cutting short the terms of the two Commissioners elected in 1976 by ordering all three posts to stand for election in 1978. Because I consider it unlikely that the three-judge court ever will have to face this question, I acquiesce in the disposition of the Court remanding "with instructions to issue an order allowing appellees 30 days within which to apply for approval of the 1968 voting change under § 5, and for further proceedings consistent with [the Court's] opinion." *Ante*, at 193.

Mr. JUSTICE REHNQUIST, with whom Mr. JUSTICE STEVENS joins, dissenting.

No party to this case has requested this Court to issue an order requiring or allowing appellees to apply for approval of the 1968 voting change under § 5 of the Voting Rights Act of 1965. The United States, when requested by this Court to express its views, made such a request. But the United States is only an *amicus curiae* in this case, and it has no standing to request relief which has never been requested by the parties. The opinion of the Court goes not merely beyond the scope of any relief sought from the District Court, but also decides questions beyond those presented in the jurisdictional state-

---

approval is denied, appellants are free to renew to the District Court their request for simultaneous election of all members of the Board at the 1978 general election." *Ante*, at 192–193.

It then remands the case "to the District Court with instructions to issue an order allowing appellees 30 days within which to apply for approval of the 1968 voting change under § 5, and for further proceedings consistent with this opinion." *Ante*, at 193. But the Court does *not* direct the District Court to grant any "renewed" request that appellants may make. All that it orders is that the District Court allow appellees 30 days within which to seek preclearance and allow appellants to "renew" their request for simultaneous elections in 1978 if the change is not approved.

ment of appellants. In so doing, of course, the opinion is contrary to our Rule 15, which provides: "Only the questions set forth in the jurisdictional statement or fairly comprised therein will be considered by the court."

I would affirm the judgment of the District Court in its entirety.