**UNITED STATES of America, Plaintiff,**

**v.**

**The BOARD OF COMMISSIONERS OF COLLETON COUNTY, South Carolina; Warren, Russell; Maxey, Gene; Baldwin, Billy; Strickland, Paul; and Fennell, Thomas, Members; Colleton County Election Commission, Carter, David L., Chairman, Defendants.**

Civ. A. No. 78–903.

United States District Court,
D. South Carolina,
Charleston Division.

Feb. 17, 1981.

Meg Slocum, Asst. U. S. Atty., Columbia, S. C., for plaintiff.

Randall T. Bell, C. Tolbert Goolsby, Jr., Asst. Atty. Gen., Columbia, S. C., for defendants.

Before RUSSELL, Circuit Judge, and CHAPMAN and BLATT, District Judges.

This action, originally filed in June of 1978, was brought by the Attorney General of the United States pursuant to 28 U.S.C. § 2201, and Sections 5 and 12(d) of the Voting Rights Act of 1965, as amended, 42 U.S.C. §§ 1973c, 1973j(d), seeking declaratory and injunctive relief against the defendants concerning the implementation of certain "practice[s], or procedure[s] with respect to voting different from that in force or effect on November 1, 1968 ...." in Colleton County, South Carolina. 42 U.S.C. § 1973c. Jurisdiction of this three-judge court, convened under 42 U.S.C. § 1973c, was predicated on Section 12(f) of the Voting Rights Act, 42 U.S.C. § 1972j(f), and 28 U.S.C. § 1345. The focus of the Attorney General's complaint was the at-large election of county councilmen provided by Act No. 809, 1976 S.C. Acts 2366, which method of election allegedly had not been precleared under Section 5 of the Voting Rights Act. By order filed October 12, 1978, based upon the proximity of the election and the limited time available to resolve the difficult factual questions, the court refused to enjoin the election for the Colleton County Council scheduled for November 7, 1978. Subsequently, on March 7, 1979, a consent decree was executed by the parties and entered by this court, which decree provided that the councilmen elected in November, 1978, under the contested election method, could serve their full term, and the decree further required that a referendum be held thereafter to choose between the "at-large" and "single member district" methods for selecting councilmen. The consent decree also provided:

> In the event that the referendum results in the adoption of an at-large method of election, the Attorney General agrees to decide upon, in an impartial and objective manner, the submission of that method of election *de novo* based on all information available, including information received subsequent to the date of this Consent Decree, and without reference to or reliance upon any previous consideration of an at-large method of election for Colleton County councilmen.

*United States v. Board of Commissioners, et al.*, Civil Action No. 78–903–8 at 4 (D.S.C. March 7, 1979) (consent decree). Additionally, the consent decree called for the court to retain "jurisdiction of this matter for the purpose, if necessary, of implementing any subsequent method of electing county councilmen in Colleton County." *Id.*

During the intervening hiatus, between the entry of that decree and the present time, circumstances have arisen that compel

the court to assert its continuing jurisdiction over this matter. On October 23, 1979, pursuant to the consent decree, a referendum was conducted and once again [1] at-large voting was selected by the electors of Colleton County. That method was submitted to the Attorney General for preclearance under Section 5 of the Voting Rights Act on November 5, 1979, and on December 19, 1979, the Assistant Attorney General for the Civil Rights Division, acting on behalf of the Attorney General, interposed a timely objection to the implementation of this at-large election method for the Colleton County Council. Considerable effort was expended thereafter in an unsuccessful attempt to obtain agreement between the parties concerning an election method for county councilmen that would withstand scrutiny under Section 5 of the Voting Rights Act; these efforts were abandoned in March, 1980. Defendants now contend that certain aspects of the administrative review conducted by the Attorney General between November and December, 1979, which culminated in the interposition of a timely objection to the at-large election method chosen in the October, 1979, referendum, did not conform to the terms of the consent decree specifying a "*de novo* [review] ..., ... without reference to or reliance upon any previous consideration of an at-large method of election for Colleton County councilmen." Therefore, defendants assert, this conduct by the Attorney General constituted a breach of the consent decree and defendants should no longer be bound by the stipulations contained therein. Plaintiff argues that defendants' failure to obtain administrative preclearance of the at-large election method selected by the October, 1979, referendum, or, alternatively, to seek a declaratory judgment from the United States District Court for the District of Columbia upholding that method, necessitates further injunctive relief to force compliance with the prior consent decree. Thus, the matter is presently before the court upon plaintiff's motion for further injunctive relief and defendants' motion to vacate the consent decree and motion for summary judgment.

As is apparent from this recitation of facts, the resolution of these pending motions hinges on the validity of the consent decree filed March 7, 1979. If this court determines that the consent decree has not been breached, defendants have admittedly failed to obtain preclearance of the at-large election method selected by the October, 1979, referendum or obtain approval of said plan by the United States District Court for the District of Columbia as required by Paragraph 4 of the terms of that decree and injunctive relief would, therefore, be appropriate; if, on the other hand, this court determines that the plaintiff has breached the terms of the consent decree, defendants would no longer be precluded by Paragraph 10 of the Stipulations of that decree from asserting that the *previous* at-large election system, selected by a referendum and run-off referendum in November, 1976, under Act No. 809 of the 1976 General Assembly,[2] was precleared by the Attorney General and the defendants could, therefore, seek summary judgment predicated on that ground. Thus, the conduct of the parties subsequent to the entry of the consent decree itself must be carefully scrutinized to determine the present validity of the consent decree and the propriety of further injunctive relief thereunder.

Paragraphs 1 through 3 of the terms of the consent decree contain the provisions pertinent to this controversy. These paragraphs provide:

1. The General Election scheduled for November 7, 1978, may proceed as scheduled in Colleton County for the election of county councilmen using the at-large method of election. Councilmen elected in the November, 1978, General Election

---

1. On November 2, 1976, and November 16, 1976, a referendum and run-off referendum were held in Colleton County pursuant to Act No. 809, 1976 S.C. Acts 2366, resulting in the election of an at-large election method by the county voters. It was this change in the voting method that originally prompted the Attorney General's complaint in this matter.

2. See note 1, *supra.*

shall be permitted to serve the full terms to which they were elected.

2. The defendants are enjoined from conducting subsequent general elections pursuant to the at-large method of election as adopted on November 2, 1976, unless the preclearance requirements of the Voting Rights Act have been satisfied.

3. A referendum will be conducted pursuant to this Decree and all state statutes not in conflict with this Decree, including Act R831, S. C. ACTS AND JOINT RESOLUTION, 1978, for the purpose of selecting a method for electing county councilmen in Colleton County in subsequent elections. A submission of that method of election and any plan implementing that method will be made within 30 days after the adjournment of the 1979 legislative session of the South Carolina General Assembly for approval or preclearance, pursuant to § 5 of the Voting Rights Act. In the event that the referendum results in the adoption of an at-large method of election, the Attorney General agrees to decide upon, in an impartial and objective manner, the submission of that method of election *de novo* based on all information available, including information received subsequent to the date of this Consent Decree, and without reference to or reliance upon any previous consideration of an at-large method of election for Colleton County councilmen.

*United States v. Board of Commissioners, et al.,* Civil Action No. 78–903–8 at 3–4 (D.S.C. March 7, 1979) (consent decree).

As provided by the decree (¶ 1), the county councilmen elected on November 7, 1978, under the at-large system provided by Act No. 809, 1976 S.C. Acts 2366, were allowed to take office and begin their terms without opposition from the Attorney General. The referendum required by ¶ 3 of the consent decree was held on October 23, 1979, and an at-large voting method was selected. On November 5, 1979, the newly chosen method of election was submitted to the Attorney General for preclearance under ¶ 3 of the decree. This submission was effectuated by a letter from Treva G. Ashworth, Senior Assistant Attorney General, Office of the Attorney General of South Carolina, to Drew S. Days, III, Assistant Attorney General, Civil Rights Division, United States Department of Justice; that letter indicated the results of the October referendum, as well as the number of registered voters of both races in Colleton County, and stated: "Additional information you may need to assist you in your consideration of this submission should be included in your file concerning the previous submission of at large election in Colleton County, R 863 of 1976, Justice File No. X7674." ("Defendants' Motion to Vacate Consent Decree, Exhibit EE.) The Attorney General's response, in a letter dated December 19, 1979, from Mr. Days to Ms. Ashworth, stated:

> Your current submission involves a change to an at-large system identical to the previously submitted one, but presents no new facts which would justify a departure from our previous conclusion. In fact, the results of the latest referendum tend to confirm the existence of the racial bloc-voting alluded to in my earlier letter, since they show a split along racial lines, with blacks favoring single-member districts and whites favoring at-large elections. Accordingly, on behalf of the Attorney General, again I must object to the implementation of at-large elections in Colleton County.

*Id.,* Exhibit FF at 1–2. The procedure employed in the Attorney General's review of the submission is detailed in a subsequent letter, dated January 21, 1980, from Mr. Days to C. Tolbert Goolsby, Deputy Attorney General, Office of the Attorney General of South Carolina:

> The underlying factual analysis of the November 5, 1979, submission was made by Ms. Hallue Wright of my staff who, like Ms. Ashworth, was involved with the previous submission of at-large elections in Colleton County. The basic legal analysis and recommendation were performed *de novo* by Mr. John MacCoon, Director of the Section 5 Unit, Voting Section, who had no prior involvement with this

matter. The decision to object, which was communicated by my letter of December 19, 1979, was made on the basis of this newly conducted analysis and you may be assured that the at-large method of election which was the subject of the October referendum in Colleton County has been accorded an impartial and objective review devoid of any reliance upon the prior submission except to the extent required by the November 5, 1979, letter of submission.

*Id.,* Exhibit GG at 2. This procedure is consistent with the internal structure of the Submissions Unit, which is explicated in a department memo of February 4, 1976. *Id.,* Exhibit HH at 2–3, 4–6. *See also* Plaintiff's Memorandum in Opposition to Defendants' Motion to Vacate, Attachments 2–6.

The focus of defendants' motion to vacate is the participation of Ms. Hallue Wright in the submission review and the use of the earlier submission file in that review. These factors are not sufficiently significant to constitute a breach of the term of the consent decree requiring *de novo* review. Even if we were to assume that Ms. Wright's participation in the review was not appropriate under these circumstances, that participation cannot be held to breach the consent decree in light of her position in the department and the subsequent examination of the submission by her superiors. Moreover, the use of information from the department file concerning the prior submission, to the extent that the information was applicable to both submissions, does not

violate ¶ 3 of the consent decree. This is particularly true in view of the directions contained in the November 5, 1979, letter from Ms. Ashworth to Mr. Days. Based on these facts, this court is of the opinion that the Attorney General's review of the October, 1979, referendum results fully complied with ¶ 3 of the consent decree and did not constitute a breach of that decree.

The conclusion hereinabove set forth resolves the remaining questions before the court. Since this court has concluded that the consent decree has not been breached, defendants continue to be bound by Stipulation 10 of the decree, and their motion for summary judgment is, consequently, inappropriate. Insofar as plaintiff's motion for further injunctive relief exceeds the scope of the consent decree, it is also inappropriate. Since ¶ 2 of the decree enjoins the defendants from conducting any election pursuant to the at-large system under Act No. 809 of 1976, and since objection to the at-large system selected in the October, 1979, referendum was validly made under the terms of the consent decree, the only legally permissible election method by which Colleton County Councilmen can be chosen would be the method in effect prior to 1976.[3] *Berry v. Doles,* 438 U.S. 190, 193, 98 S.Ct. 2692, 2694, 57 L.Ed.2d 693 (1978). However, since ¶ 1 of the consent decree provides that the five councilmen elected in November, 1978,[4] are to serve their full terms, the next general election for Colleton County Council cannot, without violating the decree terms, be scheduled until November, 1982.[5]

3. Under Act No. 780 of 1966, two councilmen were elected from each of two districts, with the fifth member elected at large. Under Act No. 809 of 1976, all councilmen were elected at large.

4. In the November, 1978, at-large election, held pursuant to the consent decree, two councilmen were selected for two-year terms and three councilmen were selected for four-year terms.

5. While it is true that this determination effectively extends the term of office of two of the councilmen for an additional two years, this court feels, given the circumstances here involved, that such result will be conducive to an

efficient administration of the government of Colleton County. Furthermore, while this court may have discretionary authority to order that an election be held under an earlier valid plan, *Berry v. Doles,* 438 U.S. 190, 98 S.Ct. 2692, 57 L.Ed.2d 693 (1978); *Perkins v. Matthews,* 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971), this court has no authority to establish, as would be required here, a new method of election for two councilmen. *United States v. Board of Supervisors,* 429 U.S. 642, 97 S.Ct. 833, 57 L.Ed.2d 106 (1977); *Perkins v. Matthews,* 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971); *Allen v. State Board of Education,* 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1971).

For the foregoing reasons, defendants' motion to vacate the consent decree and motion for summary judgment are denied. Plaintiff's motion for further injunctive relief is granted to the extent that:

1. Defendants are enjoined from conducting further elections under the at-large system under Act No. 809 of 1976 or the at-large system selected by the October, 1979, referendum.

2. Defendants shall submit an election plan to this court by January 1, 1982, which has either been precleared by the Attorney General of the United States, or which has been approved by the United States District Court for the District of Columbia, pursuant to 42 U.S.C. § 1973c. If the defendants do not provide such plan, the plaintiff may thereafter apply to this court for such relief as may then be appropriate.

3. This court will continue to maintain its jurisdiction over this matter.

AND IT IS SO ORDERED.