**Queen Esther ROBINSON; et al., Plaintiffs,**

v.

**The ALABAMA STATE DEPARTMENT OF EDUCATION; et al., Defendants.**

Civ. A. No. 86–T–569–N.

United States District Court, M.D. Alabama, N.D.

Jan. 26, 1987.

Solomon S. Seay, Jr., Seay & Davis, Montgomery, Ala., for plaintiffs.

Robert C. Campbell, III, Sintz, Campbell, Duke, Taylor & Cunningham, Mobile, Ala., George B. Azar, Azar, Campbell & Azar, Montgomery, Ala., for all City of Marion defendants.

Charles S. Coody, Office of General Counsel, Alabama Dept. of Educ., Montgomery, Ala., for all State defendants.

Before GODBOLD, Circuit Judge, HAND, Chief Judge, and THOMPSON, District Judge.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge:

The issue before this three-judge court is whether a 1965 resolution of the City Council of Marion, Alabama, transferring supervision and control of public schools within the city from an elected county board of education to an appointed city board of education, was a change requiring federal preclearance under § 5 of the Voting Rights Act of 1965, 42 U.S.C.A. § 1973c. For reasons that follow, we conclude that it was.

### I.

The facts in this case are straightforward and undisputed. On January 7, 1965, the Marion City Council adopted a resolution creating the Marion City School System. Under the resolution, the supervision and control of the public schools within the city was transferred from the Perry County Board of Education, which governed county schools and whose members were elected county-wide, to a newly created Marion City Board of Education, whose members were to be appointed by the city council. At the time of the creation of the city school system, the county had a black population of 65 percent, and a black voting age population of 60 percent; the City of Marion was 52 percent white.

When the City of Marion adopted the resolution, it was subject to the preclearance requirements of § 5 of the Voting Rights Act. This section requires that states and political subdivisions, subject to the section's coverage, obtain federal approval before they may implement any "standard, practice, or procedure with respect to voting" different from that in effect on November 1, 1964. 42 U.S.C.A.

§ 1973c. A covered jurisdiction may obtain preclearance either by securing a determination from the District Court for the District of Columbia that the change "does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color" or by submitting the change to the Attorney General of the United States and the Attorney General interposes no objection within 60 days. *Id.* The City of Marion has not secured preclearance of its January 7, 1965, resolution.

The plaintiffs, who are black resident voters of Perry County, claim that the City of Marion's adoption of the 1965 resolution without federal preclearance was illegal under § 5. The plaintiffs have sued the City of Marion, its board of education, and various city and board officials; and the Alabama Department of Education, the Alabama Board of Education, and various state education officials.[1]

### II.

At issue before this court is whether the City of Marion's 1965 resolution was a change in "standard, practice, or procedure with respect to voting." The defendants contend that the resolution was not.[2] We disagree.

In *Allen v. State Board of Elections*, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969), the Supreme Court wrote that Congress intended that § 5 be given "the broadest possible scope," so as to reach "any state enactment which altered the election law of a covered state in even a minor way." *Id.*, at 566, 567, 89 S.Ct. at 832. The Court continued that the section was "aimed at the subtle, as well as the obvious, state regulations which have the effect of denying citizens their right to

---

1. The state defendants contend that they are not necessary parties to this lawsuit. They are correct as to the § 5 claim. However, the plaintiffs have also sued the state defendants on various other federal claims, which are to be addressed by a single judge. We therefore leave up to the single judge to decide later whether the state defendants should be dismissed from this lawsuit.

2. Several months after this case was filed, the plaintiffs added as defendants the Perry County Board of Education and various county and board officials. These defendants have not taken a position on the issues before the three-judge court. Therefore, when we refer to "defendants" throughout this opinion, we are not referring to the Perry County defendants.

vote because of their race." *Id.*, at 565, 89 S.Ct. at 831. The *Allen* Court emphasized "that Congress chose not to include even . . . minor exceptions in § 5, thus indicating an intention that all changes, no matter how small, be subjected to § 5 scrutiny." *Id.*, at 568, 89 S.Ct. at 833.

Despite the Supreme Court's expansive reading of § 5, the defendants contend that the 1965 resolution was not a change in "standard, practice, or procedure with respect to voting." They maintain that the resolution was merely administrative in nature and had nothing to do with voting; they state that the resolution "did nothing more than remove administrative control of the schools located within the City of Marion from the Perry County Board of Education." Brief of Marion defendants, p. 5.

We cannot agree with the defendants' characterization of the 1965 resolution. The resolution was not merely administrative in nature; rather, it specifically addressed the electoral process in, at least, two ways. First, the resolution changed the *constituency* that selected those who supervised and controlled public schools within the city. Prior to the resolution, *county voters* elected the board members who controlled public schools in the city; under the resolution, however, the *city council* selected the board members who controlled city schools.

Second, the resolution changed the *means* by which the board members who governed city schools were selected. Prior to the resolution, the county board controlled the city schools and was *elected* by county voters; under the resolution, however, the new board that controlled city schools was *appointed* by the city council.

The Supreme Court has also emphasized that "Section 5 is not concerned with a simple inventory of voting procedures, but rather with the reality of changed practices as they affect Negro voters." *Georgia v.*

*United States*, 411 U.S. 526, 531, 93 S.Ct. 1702, 1706, 36 L.Ed.2d 472 (1973). In assessing this reality, a three-judge court, such as this, need not determine, indeed should not determine, whether a change has in fact had a discriminatory purpose or effect. *N.A.A.C.P. v. Hampton County Election Commission*, 470 U.S. 166, 181–82, 105 S.Ct. 1128, 1137, 84 L.Ed.2d 124 (1985). That task is specifically reserved for the United States Attorney General or the United States District Court for the District of Columbia. The question, instead, for us is whether the change has the potential for discrimination. *Id.*

▇▇▇ The reality here of the potential effect of the resolution on the black citizens of Perry County is glaring and unavoidable. After the resolution, the predominantly black population of Perry County lost control over the public schools in the City of Marion; the public schools in the city were no longer controlled by a board accountable to a predominantly black county, but rather by a board accountable to a city council elected by a predominantly white city population. The 1965 resolution therefore did have a potential for discrimination and should have been precleared under § 5.[3]

### III.

The final issue for us is what relief is appropriate. The circumstances of this case convince us that we should stay our hand until the City of Marion has had an opportunity to obtain preclearance of the resolution. If the city obtains preclearance, the city will surely then argue that the need for relief by this three-judge court is moot. If the city fails to obtain preclearance, then this court will be squarely faced with the question of relief.

We understand that several months ago the city submitted a request to the Attorney General to preclear the resolution, but

---

**3.** The defendants also maintain that the plaintiffs lack standing to pursue this § 5 claim. As this court has demonstrated, the 1965 resolution effectively took away from county voters the right to elect those who govern schools within the City of Marion. The plaintiffs, as county voters, have suffered an "injury in fact" and thus have standing. *Sierra Club v. Morton*, 405 U.S. 727, 734, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972).

that the city did not press for an answer from the Attorney General until recently. We will give the city 60 days from this date to obtain preclearance. *See Berry v. Doles*, 438 U.S. 190, 98 S.Ct. 2692, 57 L.Ed.2d 693 (1978).

An appropriate order will be entered.