Hoover WHITE, et al., Plaintiffs,

Ralph E. Bradford, etc., Plaintiff–Intervenor,

Mark G. Montiel, et al., Plaintiff–Intervenors,

v.

The STATE OF ALABAMA; and James Bennett in his official capacity as Secretary of State for the State of Alabama, Defendants,

Christopher Boehm, Defendant–Intervenor,

United States of America, Amicus Curiae.

Civil Action No. 94–T–94–N.

United States District Court, M.D. Alabama, Northern Division.

April 15, 1996.

Terry G. Davis, Terry G. Davis, P.C., Montgomery, AL, Solomon S. Seay, Jr., Montgomery, AL, Samuel H. Heldman, Joe R. Whatley, Jr., Cooper, Mitch, Crawford, Kuydendall & Whatley, Birmingham, AL, for Hoover White, John A. Dillard, and Glenn Moody.

Algert S. Agricola, Jr., Wallace, Jordan, Ratliff & Brandt, L.L.C., Montgomery, AL, for Ralph E. Bradford, Sr.

James McGowin Williamson, Williamson & Williamson, Greenville, AL, for Christopher Boehm.

Albert L. Jordan, Wallace, Jordan, Ratliff & Brandt, L.L.C., Birmingham, AL, for Johnny Curry, Jack Williams, and Mark G. Montiel.

William H. Pryor, Jr., Jeff Sessions, Attorney General, Office of the Attorney General, Montgomery, AL, for State of Alabama and James Bennett.

Kenneth E. Vines, Redding Pitt, U.S. Attorney, U.S. Attorney's Office, Montgomery, AL, Robert A. Kengle, Susan Barbosa Fisch, United States Department of Justice, Civil Rights Division, Washington, DC, Deval L. Patrick, United States Department of Justice, Civil Rights Division, Special Litigation Section, Washington, DC, for the U.S.

Before DUBINA, Circuit Judge, THOMPSON, Chief District Judge, and DEMENT, District Judge.

## ORDER

**MYRON H. THOMPSON, Chief Judge:**

This three-judge court has before it claims that the State of Alabama expanded the size of its Appellate Courts in violation of § 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C.A. § 1973c. We also have before us a motion to dismiss filed by the defendants, the State of Alabama and its Secretary of State, contending that the § 5 claims are moot because the state statutes authorizing this expansion have now been cleared by the United States Attorney General. We hold that the § 5 claims are not moot, but that the complaining parties are still not entitled to further relief.

### I.

Section 5 of the Voting Rights Act requires that the State of Alabama obtain preclearance of any change in a "standard, practice or procedure with respect to voting," 42 U.S.C.A. § 1973c, that has the "potential for discrimination" against African–Americans. *NAACP v. Hampton County Election Com'n,* 470 U.S. 166, 181, 105 S.Ct. 1128, 1137, 84 L.Ed.2d 124 (1985) (emphasis omitted). The State may obtain preclearance either by securing a determination from the United States District Court for the District of Columbia that the change "does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color," 42 U.S.C.A. § 1973c, or by submitting the change to the Attorney General of the United States and receiving no objection to it. *Id.*

At issue in this litigation are four state statutes. Two of the statutes were passed in 1969: the first, Act No. 602, expanded the Supreme Court of Alabama from seven to nine members,[1] and the second, Act No. 987, abolished the three-member Court of Ap-

peals and created a three-member Court of Criminal Appeals and a three-member Court of Civil Appeals.[2] The third statute, Act No. 75 enacted in 1971, expanded the Court of Criminal Appeals to five members,[3] and the fourth statute, Act No. 93–346 enacted in 1993, expanded the Court of Civil Appeals to five members.[4] The State submitted the 1993 statute for preclearance in 1993,[5] and, upon learning from the Attorney General that the 1969 and 1971 statutes had not been precleared, submitted them for clearance as well in 1993 and 1994.[6]

Plaintiffs Hoover White and others filed this lawsuit on January 27, 1994, on behalf of a class of African–American electors and resident citizens in Alabama, claiming that the four statutes had been implemented by the State without being precleared and thus in violation of § 5 of the Voting Rights Act. The plaintiffs asked that the court enjoin enforcement of these statutes for the upcoming 1994 elections. They also asserted that the system of electing Alabama's appellate judges violated § 2 of the Voting Rights Act, as amended, 42 U.S.C.A. § 1973. Shortly thereafter, plaintiff-intervenor Ralph E. Bradford intervened, asserting the same § 5 and § 2 claims and adding a § 5 claim that, incident to the expansion of the appellate courts, the State had changed the manner in which the terms for the Supreme Court Justices are staggered. This three-judge court was empaneled to hear the § 5 claims. The scope of our § 5 inquiry is limited to whether a change "is covered by § 5, but has not been subjected to the required federal scrutiny." *Allen v. State Bd. of Elections,* 393 U.S. 544, 561, 89 S.Ct. 817, 829, 22 L.Ed.2d 1 (1969).

On April 14, 1994, the Attorney General interposed objections under § 5 to the four state statutes but agreed to clear them and allow the 1994 elections to proceed upon

---

**1.** Act No. 602 is codified at 1975 Ala.Code § 12–2–1.

**2.** Act No. 987 is codified at 1975 Ala.Code §§ 12–3–1 through 12–3–6, 12–3–8 through 12–3–13, 12–3–16 through 12–3–20, 12–3–23, and 12–3–25 through 12–3–33.

**3.** Act No. 75 is codified at 1975 Ala.Code §§ 12–3–2, 12–3–4.

**4.** Act No. 93–346 is codified at 1975 Ala.Code §§ 12–3–1, 12–3–10.

**5.** Joint Record, filed on March 13, 1996, Exh. 6.

**6.** *Id.,* Exhs. 7, 8, and 15.

court approval of a proposed settlement of the § 2 claims.[7] We stayed further proceedings on the § 5 claims to allow the single-judge court to review the proposed § 2 settlement. *White v. State of Alabama*, 851 F.Supp. 427 (M.D.Ala.1994). The single-judge court approved the settlement, *White v. State of Alabama*, 867 F.Supp. 1519 (M.D.Ala.1994), and the 1994 elections were allowed to proceed. On January 24, 1996, however, the Eleventh Circuit Court of Appeals vacated the order approving the § 2 settlement. *White v. State of Alabama*, 74 F.3d 1058 (11th Cir.1996). Because the clearance of the four statutes was conditional, the Attorney General's earlier objections to them were reinstated with the rejection of the settlement.

On January 26, 1996, the defendants asked the Attorney General to reconsider her objections to the four state statutes, and on March 18, 1996, she withdrew her objections and thus cleared the statutes, albeit belatedly.[8] The defendants then moved to dismiss all the § 5 claims as moot. The plaintiffs responded that this court still had to address, among other things, whether some of the 1994 judicial elections should be set aside because they were held under unprecleared statutes. Plaintiff-intervenor Bradford further argued that the Attorney General still had not cleared the change in the manner in which Supreme Court Justices' terms are staggered. We heard oral argument on all § 5 matters on April 3, 1996.

## II.

■ We disagree with the defendants that the plaintiffs' § 5 claims are moot. In *Hampton County*, the Supreme Court instructed that the giving of after-the-fact approval to challenged alterations does not pretermit a § 5 claim; a District Court must still consider whether an election held under an unprecleared law should be set aside. The Court wrote that, "If ... the Attorney General determines that the changes had no discriminatory purpose or effect, the District Court should determine, in the exercise of its equitable discretion, whether the results of the election may stand." 470 U.S. at 183, 105 S.Ct. at 1138. The Court "note[d] ... that a prime concern of Congress when it extended the Voting Rights Act in 1982 was the prevalence of changes that were implemented without preclearance and, in some cases, were not submitted to the Attorney General until years later." *Id.* at 175 n. 19, 105 S.Ct. at 1133 n. 19 (quoting S.Rep. No. 417, 97th Cong., 2d Sess. 47–48 (1982), *reprinted in* 1982 U.S.C.C.A.N. 225–226). " 'Enforcement of [§ 5] depends upon voluntary and timely submissions of changes subject to preclearance.' " *Id.* The factors to be weighed in determining whether to set aside an election include " 'the nature of the changes complained of, and whether it was reasonably clear at the time of the election that the changes were covered by § 5.' " *Id.* at 183 n. 36, 105 S.Ct. at 1138 n. 36 (quoting *Perkins v. Matthews*, 400 U.S. 379, 396, 91 S.Ct. 431, 440, 27 L.Ed.2d 476 (1971)).

The defendants point out in their brief that, in *Berry v. Doles*, 438 U.S. 190, 98 S.Ct. 2692, 57 L.Ed.2d 693 (1978), the Supreme Court stated that, " 'If approval is obtained, the matter will be at an end.' " [9] However, the defendants overlook that in *Hampton County*, the Court clarified that this statement from *Berry* must be read in its full context and does not stand for the broad proposition that an after-election clearance of a statute obviates the need for any further relief under § 5. The Court wrote that, "In *Berry*, we stated that if the Attorney General gave his after-the-fact approval to the challenged alterations in voting procedure, 'the matter will be at an end.' In that case, however, the District Court had previously acknowledged that the changes were covered by § 5 and had reached the question of an appropriate remedy." *Hampton County*, 470 U.S. at 183 n. 36, 105 S.Ct. at 1138 n. 36 (citations omitted). The Court then distinguished the *Hampton County* case before it. "In this case ... the District Court errone-

7. *Id.*, Exh. 16.

8. Notice of § 5 determination, filed by United States as amicus curiae on March 19, 1996.

9. Reply of State defendants, filed March 25, 1996, at 2 (quoting *Berry*, 438 U.S. at 193, 98 S.Ct. at 2694).

ously concluded that the changes were outside the scope of § 5 and never engaged in the equitable weighing process necessary to determine whether failure to submit a covered change for preclearance requires that an election be set aside." *Id.* Therefore, even though the state statutes at issue before us have now been cleared, we must still address "the question of an appropriate remedy." *Id.* The plaintiffs' § 5 claims are not moot.

■ The plaintiffs request that we set aside the election of those justices and judges for whom belated clearance was obtained. We do not believe that such relief is warranted. In 1969, when the first two of the state statutes were passed, it was not clear that § 5 applied to the creation of judgeships. *See, e.g., Brooks v. State Bd. of Elections,* 775 F.Supp. 1470 (S.D.Ga.1989) (holding, in 1989, that § 5 applies to the creation of judgeships), *aff'd,* 498 U.S. 916, 111 S.Ct. 288, 112 L.Ed.2d 243 (1990). Indeed, it was not clear in 1969 that § 5 applied to judicial elections at all. *See id.* at 1483 (noting that "until 1986 ... it was not unequivocally clear that section 5 applied to the election of judges"); *see also Clark v. Roemer,* 500 U.S. 646, 653, 111 S.Ct. 2096, 2101, 114 L.Ed.2d 691 (1991) (noting that uncertainty on § 5's applicability to judicial elections should have been cleared up by Court's affirmance of *Haith* in 1986); *Haith v. Martin,* 618 F.Supp. 410 (E.D.N.C. 1985), *aff'd.,* 477 U.S. 901, 106 S.Ct. 3268, 91 L.Ed.2d 559 (1986) (summarily affirming district court's application of § 5 to judicial elections); *cf. Southern Christian Leadership Conf. v. Siegelman,* 714 F.Supp. 511, 514 (M.D.Ala.1989) (Dubina, J.) (stating that issue of whether § 2 of the Voting Rights Act applies to judicial elections was "one of first impression in the Eleventh Circuit"). Moreover, in 1993 and 1994, when it had become clear that judicial elections were subject to § 5, Alabama officials submitted the 1993 statute for preclearance, and, upon learning that the 1969 and 1971 statutes had been overlooked, submitted them as well. Under these circumstances, we believe that the elec-

tions held under the four state statutes should be permitted to stand.

■ The plaintiffs further request that we enter an injunction prohibiting the defendants from adding any judgeships in the future without timely seeking preclearance; requiring that they search their statutes, files, and records to determine and certify to us within 90 days whether all statutes and laws affecting the judiciary have been submitted for clearance and the result, if any, of such submissions; and requiring that they institute a program which will insure that all past laws, both at the state and local levels, have been properly submitted for clearance and will assure that all future laws, at both state and local levels, are timely and properly submitted for preclearance. At oral argument, counsel for the defendants admitted that the "State has an obligation, a continuing obligation to search its statutes to determine which ones should be submitted for preclearance." Counsel further stated that the defendants were "doing so on a continuing basis." We have no reason to doubt that these are good-faith representations. Therefore, even assuming that we have jurisdiction to enter such broad relief, we conclude that it is not warranted by the current record.

## III.

■ We also disagree with the defendants that plaintiff-intervenor Bradford's § 5 claim is now moot. Bradford claims that Act No. 602, the 1969 statute expanding the size of the Alabama Supreme Court, brought about a change in the staggering of the Justices' terms that had not been cleared by the Attorney General, even in her withdrawal of objections on March 18, 1996.

Bradford correctly observes that, in the 1960's, the seven Justices of the Alabama Supreme Court were elected for staggered six-year terms. The Chief Justice was elected with two Associate Justices, followed two years later by the election of another two Associate Justices, and two years later by the election of another two Associate Justices. This 3–2–2 staggering scheme operated as follows:

| 1964 | 1966 | 1968 |
|---|---|---|
| Chief Justice | Associate Justice | Associate Justice |
| Associate Justice | Associate Justice | Associate Justice |
| Associate Justice | | |

---

Bradford is also correct that, with the expansion of the Supreme Court from seven to nine Justices as a result of Act No. 602, the Justices were elected for staggered terms as follows:

| 1970 | 1972 | 1974 | 1976 |
|---|---|---|---|
| Chief Justice | Associate Justice | Associate Justice | Chief Justice |
| Associate Justice | Associate Justice | Associate Justice | Associate Justice |
| Associate Justice | | Associate Justice | Associate Justice |
| Associate Justice | | | Associate Justice |
| Associate Justice [10] | | | |

---

Bradford contends that this represents a change in staggering, moving from a 3–2–2 election scheme in the 1960's to a 5–2–3 scheme in 1970 and then a 4–2–3 scheme in 1976. Bradford admits that the 4–2–3 scheme was cleared in 1975, when Alabama's new Judicial Article was submitted to, and precleared by, the Attorney General. He argues instead that the change to 5–2–3 in 1970 was not precleared.

The defendants respond that there was no "change" at all as to the original seven Associate Justices. They continued to be elected in the 3–2–2 scheme as follows:

| 1970 | 1972 | 1974 | 1976 |
|---|---|---|---|
| Chief Justice | Associate Justice | Associate Justice | Chief Justice |
| Associate Justice | Associate Justice | Associate Justice | Associate Justice |
| Associate Justice | | | Associate Justice |

---

For the same period, the two new Associate Justices were elected as follows:

| 1970 | 1972 | 1974 | 1976 |
|---|---|---|---|
| Associate Justice | | Associate Justice | Associate Justice |
| Associate Justice | | | |

---

Therefore, we agree with the defendants that for the original seven Justices, there was no change in staggering; the State maintained the 3–2–2 scheme.

We are also convinced that the Attorney General has cleared Act No. 602's staggered-term scheme for the two new Justices as well. In her objection entered on April 14, 1994, and withdrawn on March 18, 1996, the

---

**10.** One of the new Associate Justices was only elected for a four-year term beginning in 1970; all of the other Justices, and all future Justices, were elected to six-year terms.

Attorney General identified the matters under submission as "Act No. 602 (1969), which provided for two additional associate justice positions on the supreme court, the initial appointment of persons to the new positions, and *a change in the method of staggering terms.*" [11]

Admittedly, as Bradford points out, Act 602 had two conflicting provisions. Section 1 required a 3–3–3 staggering scheme for all of the Justices, and § 3 required elections in 1970 of the two new Associate Justices. In order to meet the requirements of both provisions, the State would have had to extend the terms of two of the original seven Associate Justices who were up for reelection in 1970. Instead, the State chose to ignore the provision requiring the 3–3–3 staggering scheme. It held elections in 1970 for both the new Associate Justices and the sitting Associate Justices whose terms were to expire, establishing a 5–2–3 and then 4–2–3 staggering scheme.

Act No. 602's staggered-term scheme, as actually implemented, was cleared by the Attorney General in 1996 as well. In a brief submitted earlier, the United States correctly explains that, in order to account for the inherent conflict in Act No. 602, "The state's submission includes not only Act 602, but also a full recounting of the election history for the two additional positions. The state also clearly has identified the current justices who occupy the positions created in 1969." [12] Because the Attorney General considered the entire "election history" of Act No. 602 to have been submitted along with the Act itself, her clearance of the Act in 1996 included the staggered-term scheme as implemented.

However, because the staggered-term aspect of Act No. 602 was post-, and not pre-, cleared, we must still address the issue of remedy. For the reasons we have already given, we believe that additional relief is not warranted.[13]

**11.** Joint Record, filed on March 13, 1996, Exh. 16 (emphasis added).

**12.** Memorandum of the United States as amicus curiae, filed on March 28, 1994, at 5 n. 3.

**13.** At oral argument, counsel for Bradford contended that, for the period 1969 through 1975,

IV.

The defendants finally ask that we dissolve this three-judge court. We decline to do so at this time. Our order today could result in some unanticipated problems falling within our jurisdiction and needing our immediate attention before the upcoming 1996 election cycle.

For the above reasons, it is the ORDER, JUDGMENT, and DECREE of the court as follows:

(1) The defendants' motion to dismiss § 5 claims as moot, filed on March 22, 1996, is denied.

(2) All further relief requested by the complaining parties is denied on the merits.

(3) This three-judge court is not dissolved at this time.

Furthermore, because all the § 5 claims have now been resolved, it is ORDERED that the single-judge court may now proceed with all other claims.

there was an unprecleared change in the way persons were appointed to fill the unexpired terms of Supreme Court Justices, and that this change had an effect on how the Justices' terms were staggered. Because this alleged change, which Bradford described as the "vacancy filling position" change, was not raised in his complaint-in-intervention, we decline to address it.