Nelson **DOTSON** et al., Plaintiffs,

v.

The **CITY OF INDIANOLA** et al., Defendants.

No. GC 80-220-WK-O.

United States District Court, N. D. Mississippi, Greenville Division.

May 13, 1981.

Charles Victor McTeer, Greenville, Miss., for plaintiffs.

W. Dean Belk, Indianola, Miss. and James L. Robertson, Oxford, Miss., for defendants.

Before CHARLES CLARK, Circuit Judge, KEADY, Chief Judge, and SENTER, District Judge.

## OPINION

CHARLES CLARK, Circuit Judge:

On October 1, 1980, Nelson Dotson and fifteen other black adult citizens, residents, and qualified electors of Sunflower County, Mississippi, brought this action pursuant to Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. §§ 1973 *et seq.* Section 5 prohibits a state or political subdivision from enacting or seeking to administer any voting qualification, prerequisite, standard, practice, or procedure different from that in effect on November 1, 1964, without first either obtaining a declaratory judgment in the United States District Court for the District of Columbia or securing tacit recognition from the Attorney General that the voting change does not have the purpose or effect of denying or abridging the right to vote on account of race, color, or membership in a language minority. 42 U.S.C. § 1973c.

The complaint in this case is composed of five counts, only the first of which is presently under consideration. In Count I the plaintiffs challenge four annexations to the corporate limits of Indianola, claiming that the City violated Section 5 when it made these annexations without obtaining preclearance as required by the Act. They seek declaratory and injunctive relief against Phillip Fratesi, Mayor of Indianola, and against Gary L. Austin, Charlotte H. Buchanan, G. Clarke Johnson, W. Harold Manning, and James D. Robinson, members of the Indianola Board of Aldermen. The plaintiffs seek an order setting aside the 1977 municipal elections and scheduling a special election to choose new city officials. They also ask for prospective injunctive relief requiring the City to hold future elections based upon the pre-annexation city limits.

We grant only the plaintiffs' request for declaratory and prospective injunctive relief.

## I.

Substantially all of the facts necessary to the disposition of the issues in this case have been stipulated by the parties. On May 25, 1965; May 4, 1966; September 2, 1966; and July 14, 1967, the City of Indianola obtained decrees from the Chancery Court of Sunflower County, Mississippi, approving its Petitions for Confirmation of Extension of Boundaries. Each of these annexations added new eligible voters to the electoral base for Indianola; and the City now concedes, as it must, that annexations enlarging the number of eligible voters in the municipality are changes of a voting qualification, prerequisite, standard, practice, or procedure as contemplated by Section 5 of the Voting Rights Act. *See Perkins v. Matthews,* 400 U.S. 379, 388–95, 91 S.Ct. 431, 437–39, 27 L.Ed.2d 476, 484–89 (1971). Indianola also concedes that it has not yet obtained preclearance of these annexations as required by Section 5.

Indianola has implemented the 1965–67 annexations in the municipal elections conducted in 1968, 1969, 1973, and 1977. In each of these elections, persons residing in the newly annexed areas have participated both as voters and as candidates. The incumbent mayor and aldermen were all elected in 1977, and four of the five present aldermen reside in the annexed areas.

Some additional facts are relevant to the question of the scope of relief to be afforded in this case. On October 2, 1975, J. Stanley Pottinger, Assistant U.S. Attorney General for the Civil Rights Division, wrote to Frank Crosthwait, then City Attorney for Indianola. Pottinger informed Crosthwait that the Division had learned of several annexations to the corporate limits of Indianola and advised him that these changes in voting practice or procedure could not lawfully be implemented unless the City first complied with the preclearance requirement of Section 5. Pottinger requested the City to submit the annexations to the Attorney General for review or to bring an appropriate declaratory action in the District Court for the District of Columbia. On November 10, 1975, Crosthwait replied to the Pottinger letter, noting three of the challenged annexations and identifying them by their location in the

Chancery Clerk's records. Crosthwait's letter did not refer to the 1965 annexation.

On December 23, 1975, Pottinger again wrote to Crosthwait, this time requesting additional information necessary for proper evaluation of the annexations. For some unexplained reason, the City never responded to this request. Then, on August 21, 1980, the Department of Justice wrote to the present City Attorney, W. Dean Belk, and asked the City to provide the additional information previously requested concerning the 1966 and 1967 annexations. The Justice Department also requested the same kind of information for the 1965 annexation. The City represents to this court that it has now submitted all of the information sought by the Department of Justice concerning each of these annexations.

## II.

■ The Voting Rights Act ordinarily limits the issues for determination by the three-judge court to the question of whether the political subdivision has complied with the requirements of the Act and to the nature of relief to be afforded the plaintiffs in the event of non-compliance. *See United States v. Board of Supervisors of Warren County, Miss.*, 429 U.S. 642, 97 S.Ct. 833, 51 L.Ed.2d 106 (1977); *Perkins v. Matthews*, 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971).

■ However, Indianola has interposed numerous defenses to the plaintiffs' requested relief. The main defense, and the one upon which the City primarily relies, is the doctrine of laches. Laches is an equitable concept that may operate in some contexts as a time limitation barring a plaintiff's claim. It is founded upon the policies of promoting repose in society, encouraging diligence in plaintiffs, avoiding evidentiary problems occasioned by long delay, and advancing shared concepts of justice. *See generally* Note, *The Application of the Doctrine of Laches in Public Interest Litigation*, 56 B.U.L. Rev. 181, 196 (1976). To prevail on a laches defense, a defendant must show a delay by the plaintiff in asserting a right or claim, that the delay was inexcusable, and there has been undue prejudice to the defendant resulting from the delay. *See, e. g., Environmental Defense Fund v. Alexander*, 614 F.2d 474, 478 (5th Cir. 1980), *cert. denied,* —— U.S. ——, 101 S.Ct. 316, 66 L.Ed.2d 146 (1980); *Bernard v. Gulf Oil Co.*, 596 F.2d 1249, 1256 (5th Cir. 1979); *Matter of Henderson*, 577 F.2d 997, 1001 (5th Cir. 1978).

Although there is no precedent for application of the laches defense to private suits for injunctive relief under Section 5, the City urges us to adopt it in this case. The gist of its argument is as follows. Indianola first annexed adjacent lands in 1965. Thus, the plaintiffs have delayed 15 years before initiating this action. The City then argues that we should look to the analogous state statute of limitations, in this case the six-year "catch-all" statute embodied in Miss. Code Ann. § 15–1–49 (1972). Since the plaintiffs' delay exceeds the applicable limitations period, a presumption arises that the delay is inexcusable, thereby shifting to the plaintiffs the burden of showing some justification for the untimeliness of their suit. To demonstrate prejudice the City offers three categories of evidence. First, it offers proof of potential witnesses who are now deceased or who have diminished memories of the events surrounding the annexations to show it has incurred a disadvantage in asserting or establishing its claims or defenses. Second, the City offers to show that it has expanded municipal services and incurred bond obligations on the assumption that the annexations were properly made. Third, the City proffers evidence of injury to citizens and residents of Indianola who, relying in good faith on the validity of the annexations, have moved into and purchased property in the newly annexed areas.

■ Nevertheless, we conclude that the doctrine of laches is not available in a private action for injunctive relief brought under Section 5 of the Voting Rights Act. We do so for several reasons.

First, application of the laches defense to bar the plaintiffs' action would frustrate

the remedial purposes of the Act. Section 5 was intended to prevent covered states from fashioning voting changes which might deprive blacks of their right to vote. *See generally South Carolina v. Katzenbach*, 383 U.S. 301, 308–16, 86 S.Ct. 803, 808–12, 15 L.Ed.2d 769, 775–80 (1966). Congress imposed upon the covered states the burden of submitting any change in voting practice or procedures for approval in Washington, D.C., before it became effective. *See Perkins v. Matthews*, 400 U.S. 379, 396, 91 S.Ct. 431, 441, 27 L.Ed.2d 476, 489 (1971); *Ramos v. Koebig*, 638 F.2d 838, 846 (5th Cir. 1981).

Indianola has not discharged its undisputed obligation to submit these four annexations to either test designated by Congress. The burden to obtain federal approval of those annexations before conducting elections based upon the new corporate limits has always rested with the City. The laches defense, however, presupposes that the plaintiffs had an obligation to challenge the altered voting regulation in the first instance. Allowing Indianola to assert laches to bar the plaintiffs' requested relief would transform its own long failure to comply with the duty imposed upon it by Section 5 into a defense. Under this approach, the longer the City delayed in fulfilling its statutory responsibilities, the better its defense would become. Therefore, to apply the doctrine of laches to a private injunctive action "would be to do precisely what § 5 was designed to forbid: allow the burden of litigation delay to operate in favor of the perpetrators and against the victims of possibly racially discriminatory practices." *Berry v. Doles*, 438 U.S. 190, 194, 98 S.Ct. 2692, 2694, 57 L.Ed.2d 693, 697 (1978) (Brennan, J., concurring) (citation omitted).

■ Second, the doctrine of laches is inconsistent with the nature of the obligation imposed by Section 5 upon affected states and political subdivisions. The duty to obtain federal approval of new voting standards, practices, or procedures is a continuing one. It arises anew each time the defendant enacts or seeks to administer an uncleared voting regulation. *See* 42 U.S.C.

§ 1973c. Even though Indianola effected the challenged annexations during 1965, 1966, and 1967, it breached its statutory duty to secure preclearance of the annexations when it conducted municipal elections in 1968, 1969, 1973, and 1977 based upon the post-annexation corporate limits. Although the City insists that the plaintiffs have delayed bringing this action for at least 13 years, it is clear that Indianola violated Section 5 as recently as 1977 by holding municipal elections utilizing boundary changes which had not been precleared. Thus, the vice of City's past non-compliance survives unabated as a present violation.[4]

Third, the remedy sought does not go to the legality of the annexations. It is limited to the right of those living in such areas to vote in municipal elections.

■ For similar reasons we reject the City's proffered statute of limitations defense. Assuming without deciding that an action for injunctive relief brought by a private litigant could be barred by the running of an analogous state statute of limitations, it is clear that the applicable six-year limitations period of Miss. Code Ann. § 15–1–49 (1972) has not yet run. Less than four years ago, Indianola held municipal elections which improperly implemented the four challenged annexations. Therefore, even if applicable, the statutory period has not expired as to this election.

In addition to the laches and statute of limitations claims, the City raises several other defenses in its answer, including the necessity under state law that one objecting to an annexation take an appeal within 10 days from the approving judgment of the Chancery Court, exhaustion of state remedies, and the unconstitutionality of the Voting Rights Act. The City has not pressed these contentions before the three-judge court. They are without merit, and we reject them.

### III.

We come now to the question of remedy. Since Indianola admits that the challenged annexations are subject to the Act's pre-

clearance requirement and that it has failed to fully comply with the provisions of Section 5, the municipal elections conducted by Indianola in 1977 were in violation of the Voting Rights Act. To remedy the municipality's past implementation of the unapproved annexations, plaintiffs seek an order setting aside the 1977 elections, ousting the incumbent city officials, and compelling a special election to choose replacements to serve until the next regularly scheduled election. Although the Supreme Court has tacitly recognized that such retrospective relief may be appropriate in some cases where an election implementing a covered voting change has been held without preclearance, it has never decided a case specifically endorsing such a remedy. We conclude that ordering a special election is unwarranted in the circumstances of this case.

■ The Supreme Court has identified several factors to be considered when determining whether overturning an election and ordering a new one will be justified. One factor is whether the state or political subdivision could reasonably be expected to have known that the election violated Section 5. When the issue of whether the disputed change in voting practices or procedures is novel or unsettled, then ordering a new election would not be appropriate. *See Allen v. State Board of Elections*, 393 U.S. 544, 571–72, 89 S.Ct. 817, 835, 22 L.Ed.2d 1, 20–21 (1969).

In *Perkins v. Matthews*, 400 U.S. at 396–97, 91 S.Ct. at 441, 27 L.Ed.2d at 489–90, the Court identified several other factors relevant to fashioning appropriate relief. Included were the nature of the voting changes involved and whether the political subdivision had sought federal approval. Where no submission of the implemented change had been made pursuant to Section 5, *Perkins* suggested that it might be appropriate to give the affected jurisdiction a period of time in which to seek preclearance, ordering a new election only if preclearance were not obtained. *Id.*

Finally, in *Berry v. Doles*, 438 U.S. at 192–93, 98 S.Ct. at 2693–94, 57 L.Ed.2d at 696, the Supreme Court adopted the remedial approach suggested in *Perkins*. In *Berry*, the covered change was a statute staggering the terms of the members of a county board, administered in an election held without preclearance. The district court enjoined future enforcement of the statute but refused to set aside the past election because the statute effected a minor, technical change and because there was no evidence of discriminatory intent. The Court remanded the case with directions to enter an order allowing the defendants 30 days to submit the change pursuant to Section 5. The Court noted that if preclearance were denied or not sought, the district court might properly order all members of the board to be elected simultaneously at the general election. *Id.* at 192–93, 98 S.Ct. at 2694, 57 L.Ed.2d at 696.

■ Relying upon these factors, the plaintiffs urge that ordering new elections is justified in this case. They point out that these four annexations made extensive and comprehensive changes in voting practices and not minor or technical ones. They also point out that the City must have known of its duty to seek federal approval of these changes since *Perkins v. Matthews* established in 1971 that such annexations were covered by the Act. *See* 400 U.S. at 389–90, 91 S.Ct. at 437, 27 L.Ed.2d at 485–86. Moreover, they emphasize that the 1975 Pottinger-Crosthwait correspondence indicates that the City actually knew of its statutory duty.

After giving full consideration to these facts, we nevertheless decline to order new elections. Two reasons predominate. First, counsel for the City of Indianola have represented to the court that all the requested preclearance information has been submitted to the Attorney General of the United States as of May 1, 1981. This submission makes possible a final resolution of the dispute.

Second, burdens imposed upon the City and its residents by holding special elections decidedly outweigh the benefits inuring to the plaintiffs and public. The incumbent mayor and aldermen, elected in 1977, have already served more than three-quarters of

their terms. Scheduled regular primary and general elections must be conducted November 8 and December 10 of this year. City officials chosen for the remainder of the incumbents' terms at a special election which allowed meaningful time for campaigning would serve only a few months before the regular election process commenced.

Any elections are expensive and time-consuming. Special elections would entail campaign expenses for both black and white candidates and supporters to gain relatively brief terms of office. The burdens of cost and disruption of the orderly administration of municipal affairs entailed by special elections would far outweigh the possible benefits to the general public. The plaintiffs themselves would obtain little or no benefit, too. To void the 1977 elections and order a special election could do nothing but vindicate an abstract right without according any perceptible advantage in addition to the remaining relief we grant. Taking into account the rights of all the parties involved and the public, we decline to require special elections now. The incumbent city officials may continue to hold office for the remainder of their present terms and until their successors are elected and take office at the regular elections held later this year.

■ However, Indianola cannot continue to hold elections based upon uncleared post-annexation city limits. Unless and until the City obtains clearance of its post-Act annexations in accordance with Section 5, all future elections must be conducted on the basis of the city boundaries as they existed before the unprecleared annexations were made, and citizens residing in such annexed areas may not participate in future municipal elections, either as electors or as candidates. *Cf. Perkins v. Matthews,* 400 U.S. at 397 n.14, 91 S.Ct. at 441 n.14, 27 L.Ed.2d at 490 n.14. This relief applies only to the right to vote and be a candidate. It does not, of course, constitute de-annexation, and it does not affect the rights of citizens residing in the annexed areas in any other way.

Therefore, having determined that the May 25, 1965; May 4, 1966; September 2, 1966; and July 14, 1967, annexations by the City of Indianola constitute voting qualifications, prerequisites, standards, practices, or procedures different from those in force or effect November 1, 1964; that such differences are within the coverage of Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c; and that the City failed to comply with the provisions of Section 5 with regard to such changes, the court concludes that the plaintiffs are entitled to the declaratory and injunctive relief set out above. All the remaining issues should be remanded to Judge William C. Keady for determination as a single district judge.

Judgment will be entered in accordance with Fed.R.Civ.P. 58.