**UNITED STATES of America ex rel. Lemuel A. HARLAN, Appellant,**

v.

**Harold BACON, Bonnie Bacon, John Bacon, and Kelly Bacon, Appellees.**

No. 93–1807.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1993.

Decided March 31, 1994.

Robert L. Sikma, Sioux City, IA, argued. Appearing on the brief was Patrick J. Phipps, for appellant.

William C. Stanek, Omaha, NE, argued, for appellees.

Before JOHN R. GIBSON * and MORRIS SHEPPARD ARNOLD, Circuit Judges, and BARTLETT,** District Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Relator Lemuel A. Harlan ("Harlan"), brought this action on behalf of the United States to recover the crops and money obtained by the Bacons under a sharecrop agreement with the Omaha Indian Tribe because the lease was not approved by the relevant governmental officials. The District Court[1] entered summary judgment for the defendants, 851 F.Supp. 367, and Harlan appeals. The issue is whether 25 U.S.C. § 81 applies to a lease of Indian lands for purposes of sharecropping. We hold that it does not and therefore affirm.

## I.

The parties are in agreement about the facts of the case.

From 1986 through 1990, the Bacons leased farmland from the Omaha Indian Tribe under a sharecrop arrangement, with 40% of· the produce to be delivered to the tribe. In 1990, the Superintendent of the Bureau of Indian Affairs notified the Bacons by letter that Section 81 of Title 25 and 25 C.F.R. Chapter 3 put them at .risk. The relevant portions of 25 U.S.C. § 81 provide that:

> No agreement shall be made by any person with any tribe of Indians ... for the payment or delivery of any money or other thing of value, ... or for the granting or procuring any privilege to him, ... in consideration of services for said Indians relative to their lands, ... unless such contract or agreement be executed and approved as follows:
>
>   *    *    *    *    *    *
>
> ... it shall bear the approval of the Secretary of the Interior and the commissioner of Indian Affairs indorsed upon it.

The statute further provides that:

> All contracts or agreements made in violation of this section shall be null and void, and all money or other thing of value paid to any person by any Indian or tribe, or any one else, for or on his or their behalf, on account of such services, in excess of the amount approved by the Commissioner and Secretary for such services, may be recovered by suit in the name of the United States....

The Bacons' lease was never approved by the Bureau of Indian Affairs·or the Department of the Interior. The Bacons continued to farm the property through what was left of the lease term, harvesting and selling their share of the crops.

## II.

When construing a statute, we are obliged to look first to the plain meaning of the words employed by the legislature. *Chevron U.S.A. v. Natural Res. Def. Council,* 467 U.S. 837, 842–843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). We "must give effect to the unambiguously expressed intent of Congress." *Id.* Our decision, however, is:

> not to be reached by a strict construction of the words of the Act, nor by application of artificial canons of construction. On the

* The HONORABLE JOHN R. GIBSON was Circuit Judge of the United States Court of Appeals for the Eighth Circuit at the time this case·was submitted and took senior status on January 1, 1994, before the opinion was filed.

** The HONORABLE D. BROOK BARTLETT, United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable Donald E. O'Brien, District Judge, United States Court for the Northern District of Iowa.

contrary, we are to read the statutory language in its ordinary and natural sense, and if doubts remain, resolve them in the light, not only of the policy intended to be served by the enactment, but, as well, by all other available aids to construction. But it is not our function to engraft on a statute additions which we think the legislature logically might or should have made. *United States v. Cooper Corp.*, 312 U.S. 600, 605, 61 S.Ct. 742, 744, 85 L.Ed. 1071 (1941).

If we parse the statute before us, it seems to command that:

(1) [n]o agreement shall be made

(2) by any person

(3) with any tribe of Indians, or individual Indians not citizens of the United States,

(4) for

    (a) the payment or delivery of

      (i) any money or

      (ii) other thing of value, in present or in prospective

    or for

    (b) the granting or procuring any privilege to him, or any other person

(5)(a) in consideration of services for said Indians relative to their lands,

    or

    (b) in reference to, annuities, installments, or other moneys, claims, demands, or thing, under laws or treaties with the United States, or official acts of any officers thereof, or in any way connected with or due from the United States,

(6) unless such contract or agreement be executed and approved ...

Condition (1) is satisfied: the Bacons' lease is clearly an "agreement." The Bacons, who are "persons" within the meaning of condition (2), also clearly received something of value as contemplated under condition (4)(a)(ii) or (4)(b), namely, a leasehold. The issue then becomes whether the Bacons received this thing of value either "in consideration of services for" the Omaha Indian Tribe "relative to their lands," or in reference to any benefice emanating from the United States.

■ The wording of the statute appears to concern all contracts where Indians are called on to relinquish a government benefit or pay for services "relative to their lands." From the facts to which both parties agree, it does not appear to us that the Bacons received their leasehold interest in exchange for "services for the Indians relative to their lands" or in reference to trust property held or emanating from the government. Instead, it is clear the Bacons received the leasehold in exchange for crops.

Harlan argues that the language of Section 81 is broad and reflects a policy that all contracts made by non-Indians with Indians on the reservation affecting Indian lands be supervised by the federal government. This argument is not persuasive. It is difficult to explain how Congress could have chosen the word "services" had it intended that this particular statute should effect such a sweeping policy. We are reluctant to give the word "services" any meaning other than its commonly understood one.

It is possible, we suppose, to read the statute as follows:

(1) [n]o agreement shall be made

(2) by any person

(3) with any tribe of Indians, or individual Indians not citizens of the United States,

(4) for

    (a) the payment or delivery of

      (i) any money or

      (ii) other thing of value, in present or in prospective

    or for

    (b) the granting or procuring any privilege to him, or any other person in consideration of services for said Indians relative to their lands,

    or

    (c) in reference to, annuities, installments, or other moneys, claims, demands, or thing, under laws or treaties with the United States, or official acts of any officers thereof, or in any way connected with or due from the United States,

(5) unless such contract or agreement be executed and approved ...

The distinction of this particular reading is that it limits the "consideration of services" clause to agreements concerning grants or procurement of privileges. This limitation seems concomitantly to expand the clause we have marked as (4)(a) to encompass the entire universe of contracts.

■ Unfortunately, we cannot uncover any legislative history that might help to resolve the apparent ambiguity. Nevertheless, we are not persuaded that the statute should be read this second way for two reasons. First, it is a cardinal and long-revered canon of statutory construction that Congress is not to be presumed to have done a vain thing, namely, using superfluous language. A reading which expands the "money or thing of value" clause to include the universe of contracts reduces the "in consideration of services" and "trust property" clauses to nullities. What conceivable contract could fall under either of these clauses without falling first under the "money or thing of value" clause? Such an interpretation also renders other provisions of title 25 dealing with contracts redundant. Section 85, for example, invalidates any contract made with an Indian involving tribal funds or property in the hands of the government, and forbids payment "for services rendered in relation thereto." Similarly, § 177 forbids agreement effecting conveyances of Indian lands. An expansive reading of § 81, however, would appear completely to occupy such ground already.

■ Second, the cases that Harlan cites to support this broad reading are not apposite. *Narragansett Indian Tribe v. Ribo, Inc.,* 686 F.Supp. 48 (D.R.I.1988), does note that, as Harlan suggests, section 81 is to be liberally construed. That case does not, however, stand for the proposition that section 81 applies to anything other than contracts in consideration of services. *Narragansett* involved a bingo management agreement. Like many of the cases interpreting section 81, *Narragansett* simply holds that bingo management agreements involve services within the meaning of that section. *Montana Bank of Circle, N.A. v. United States,* 7 Cl.Ct. 601 (1985), is even less relevant to the issue before us. That case involved a suit to enforce a lease with the Bureau of Indian Affairs for office space in a failed industrial park project. The court recognized, as we do, that the statute establishes a fiduciary relationship between the government and Indian tribes. While a general fiduciary relationship does exist, such a relationship in no way implies that section 81 governs leases of land that do not involve the provision of services to Indian tribes.

■ Furthermore, the argument that Congress intended to oversee all contracts with Indians does not address the possibility that such a policy might be effected by a number of different statutes. 25 U.S.C. § 177 appears to deal directly with cases where, as here, a person attempts to lease tribal lands without express approval of the federal government. That statute reads, in relevant part, that:

> [n]o purchase, grant, lease, or other conveyance of lands, ... from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution.

25 U.S.C. § 177 (1993). The statute makes violators subject to a fine of $1,000, but has no provision entitling relators to bring actions under it. *See James v. Watt,* 716 F.2d 71 (1st Cir.1983), *cert. denied,* 467 U.S. 1209, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984).

While the Bacons' lease appears to fall directly within the scope of 25 U.S.C. § 177, we are not called upon to decide whether it does. We simply point to this statute to demonstrate that a broad and general policy to oversee all contracts by Indians need not be accomplished through 25 U.S.C. § 81 alone. We do not attempt to list all cases not governed by statute, or governed by other statutes; but we do say with some confidence that this lease is not governed by 25 U.S.C. § 81. Because the tribe received crops and not services, we hold that the statute is inapplicable to the lease at issue here.

### III.

For the foregoing reasons, we affirm the judgment of the district court.